**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| Vance Grell, on behalf of himself and of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>GCC Alliance Concrete, Inc., VS Holding Company, Great Lakes Concrete, Inc., Kent Robert Stewart, Siouxland Concrete Company, Northwest Ready-Mix Concrete, Inc., and Steven Keith VandeBrake, )<br>)<br>Defendants. ) | Case No. 5:10-cv-4054<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Vance Grell, on behalf of himself and all others similarly situated, by his attorneys, bring this action against Defendants GCC Alliance Concrete, Inc., VS Holding Company, Great Lakes Concrete, Inc., Kent Robert Stewart, Siouxland Concrete Company, Northwest Ready-Mix Concrete, Inc., Steven Keith VandeBrake, and unnamed co-conspirators, for treble damages and injunctive relief under the antitrust laws of the United States, demanding a trial by jury, and makes the following allegations based on information, belief and investigation of counsel, except those allegations that pertain to Plaintiff, which are based on personal knowledge:

## SUMMARY OF CLAIMS

1.      This lawsuit is brought as a class action on behalf of all individuals and entities that purchased ready-mix concrete directly from Defendants or their unnamed co-conspirators yet to be identified, or any predecessors, parents, subsidiaries, or affiliates thereof from at least January 1, 2006 through the present.

2.      Plaintiff alleges that Defendants and their co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the price of ready-mix concrete.  The combination and conspiracy constituted an unreasonable restraint of trade under federal antitrust law.

3.      Defendants and their co-conspirators carried out their unlawful combination by, *inter alia*, engaging in discussions about the price at which they would sell ready-mix concrete, agreeing to specific price increases and the timing of such increases, issuing price announcements or price quotations based on their agreements, and selling ready-mix concrete at agreed-upon supra-competitive prices.

4.      As a result of the unlawful conduct of Defendants and their co-conspirators, Plaintiff and other Members of the Class paid artificially inflated prices for ready-mix concrete and have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

5.      Plaintiff brings this action for treble damages, costs of suit, attorneys' fees, and injunctive relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26

for the injuries sustained by plaintiff and members of the Class arising from violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

6.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

7.     Venue in this District is proper pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26, and 28 U.S.C. § 1391.  The combination and conspiracy charged in this Complaint was carried out in substantial part within this District.  Defendants are found, or transact business within this District, and the trade and commerce described in this Complaint was carried out in substantial part within this District.

## PARTIES

8.     Plaintiff Vance Grell is a resident of Galva, Iowa and has purchased ready-mix concrete from one or more of the Defendants on multiple occasions throughout the Class Period.

9.     Defendant GCC Alliance Concrete, Inc. ("Alliance") is an Iowa corporation with its principal place of business at 412 Eighth Street, SW, Orange City, Iowa, 51041. Alliance is the successor company to Alliance Concrete, formed by a 2005 merger of Joe's Ready-Mix and Russell's Ready-Mix.  In 2008, Grupos Cementos de Chihuahua, (hereinafter, "GCC")  purchased Alliance Concrete, Inc., based in northwest Iowa, serving the surrounding markets including South Dakota, Minnesota, and Nebraska.  The transaction included a fleet of 123 mixers and 73 dump and tanker trucks, as well as 23 ready-mix plants that reported 2006 shipments of approximately $52 million.  During the

Class Period, Alliance produced and sold ready-mix concrete to Members of the Class, including Plaintiff.

10. Defendant VS Holding Company is an Iowa corporation with its principal place of business at 1140 North Main Avenue, Sioux Center, Iowa 51250. VS Holding Company was formerly known as Alliance Concrete, Inc., an Iowa corporation that changed its name to VS Holding Company by Articles of Amendment filed with the Iowa Secretary of State on January 14, 2008. Alliance Concrete, Inc. and VS Holding Company have conducted business during the Class Period under their own names and various trade names, including but not limited to: Alliance Concrete of Lake Park, Alliance Concrete of Spencer, Alton Well & Concrete Co., Inc., Joe's Ready Mix, Inc., Lake Ready Mix, Lake Ready Mix of Lake Park, Lake Ready Mix of Spencer, and Russell's Ready Mix, Inc. During the Class Period, VS Holding produced and sold ready-mix concrete to members of the class, including Plaintiff.

11. Defendant Siouxland Concrete Co. ("Siouxland") is a Nebraska corporation with its principal place of business 2201 South G Street, South Sioux City, Nebraska 68776. During the Class Period, Siouxland produced and sold ready-mix concrete to members of the class.

12. Steven K. VandeBrake ("VandeBrake") is a resident of the State of Iowa and, at all relevant times, was an officer, director and/or employee of GCC and VS Holding Company and/or their predecessors. VandeBrake is a former Sales Manager for GCC and a former President of VS Holding Company.

13. Defendant Great Lakes Concrete, Inc. ("Great Lakes") is an Iowa corporation with its principal place of business located a 3413 Highway Boulevard, Spencer, Iowa 51301-2155. During the Class Period, Great Lakes manufactured and sold ready-mix concrete.

14. Defendant Northwest Ready-Mix Concrete, Inc. ("Northwest") is an Iowa corporation with its principal place of business located at 6340 180th Street, Ocheyedan, Iowa 51354-7065. During the Class Period, Northwest manufactured and sold ready-mix concrete.

15. Defendant Kent Robert Stewart is a resident of the State of Iowa and, at all relevant times, was an officer, director and/or employee of Defendants Great Lakes and Northwest.

16. Various other persons, firms, and corporations not named as Defendants herein have participated as co-conspirators with Defendants and have performed acts in furtherance of the conspiracy. These co-conspirators will be identified as this litigation proceeds and Plaintiff will amend his complaint to add them as named Defendants at the appropriate time. Upon information and belief, Defendants' co-conspirators include, but may not be limited to, other companies from which Plaintiff purchased ready-mix concrete directly during the relevant time period.

## INDUSTRY BACKGROUND

17. Ready-mix concrete is a mixture of cement and other materials such as sand, gravel and water.

18.     Ready-mix concrete is produced at batch plants, where the proportions of input materials are measured, combined with water in a rotating drum mounted on a truck, and then mix in the truck's drum on the way to the construction site. Because the addition of water begins an irreversible chemical reaction, and because the concrete is poured directly at the construction site, truck arrival must be timed so that the concrete hardens at the appropriate time.

19.     The strength of the concrete is determined by the amount of water added, and is measured in pounds per square inch ("psi").

20.     Ready-mix concrete is sold by the cubic yard, and is priced in dollars per cubic yard.

21.     Ready-mix concrete is used principally in commercial, governmental, and residential construction. Absent the unlawful conspiracy, the Defendants' ready-mix concrete manufacturing subsidiaries would compete among themselves and for the sale of ready-mix concrete in Iowa.

22.     Concentration in a particular industry facilitates the operation of a price-fixing cartel because it makes it easier to coordinate behavior among co-conspirators, and at the same time it makes it more difficult for customers to avoid the effects of collusive behavior.

23.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small (if any) decline in the quantity

6

sold of that product. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

24. For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether.

25. Ready-mix concrete is a major and necessary component of commercial, governmental, and residential construction. A small but significant, non-transitory increase in the price of ready-mix concrete will not cause construction companies to switch to a different construction material, if such a material is even available and compatible with the needs of a given construction job.

26. The U.S. Department of Justice (DOJ) found the ready-mix concrete industry highly inelastic when it challenged an industry merger as anticompetitive, "a small but significant post-acquisition increase in the price of ready mix concrete that meets the bid specifications would not cause the purchasers of ready mix concrete for large projects to substitute another building material in sufficient quantities, or to utilize a supplier of ready mix concrete [who would otherwise not be considered a competitor for the business] with sufficient frequency so as to make such a price increase unprofitable." *U.S v. Cemex, S.A.B. de C.V.,* Amended Complaint, D.D.C. No. 07-cv-006400, at 6-7.

27. When products offered by different suppliers are viewed as interchangeable by the purchaser, it creates an environment more conducive for the suppliers to

unlawfully agree on the price for the product, and in turn to effectively monitor agreed-upon prices.

28. Ready-mix concrete is a commodity, which is interchangeable across manufacturers. Although construction projects can be bid under various concrete specifications, all of the Defendants have the equipment and expertise to meet these specifications.

## TRADE AND COMMMERCE

29. During all or part of the Class Period, Defendants and their co-conspirators produced and/or sold ready-mix concrete to purchasers in the United States, primarily in northwest Iowa, South Dakota, Minnesota, and Nebraska. These business activities substantially affected interstate trade and commerce. Moreover, the ready-mix concrete produced and sold by Defendants and their co-conspirators is comparable to and interchangeable with the ready-mix concrete produced and/or sold by their competitors.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of himself and, under Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as a representative of the following Class:

> All persons and entities that purchased ready-mix concrete directly from Defendants or any of their co-conspirators from at least January 2006 through the present. Excluded from the Class are Defendants, their co-conspirators, their respective parents, subsidiaries, and affiliates, and their employees.

31. Plaintiff does not know the exact size of the Class, but alleges that Defendants and their co-conspirators possess such information. Given the trade and

commerce involved, Plaintiff alleges on information and belief that the Class numbers at least in the hundreds so that joinder of all members is impracticable.

32. There are questions of law and fact common to the Class, including the existence, scope, and efficacy of the conspiracy alleged.

33. Plaintiff is a Member of the Class, and his claims are typical of the claims of Class Members generally. Plaintiff's claims arise from the same conduct giving rise to the claims of the Class, and the relief Plaintiff seeks is common to the Class.

34. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is represented by competent counsel experienced in the prosecution of class action antitrust litigation. Plaintiff's interests coincide with, and are not antagonistic to, those of the Class.

35. Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members. Predominating common questions include, without limitation:

    (a) whether Defendants and their co-conspirators conspired to fix, raise, stabilize, or maintain the price of ready-mix concrete;

    (b) the scope and extent of the conspiracy;

    (c) whether the conspiracy affected the prices of ready-mix concrete paid by Class Members during the class period;

    (d) the identity of each member of the conspiracy;

    (e) the time period during with the conspiracy existed;

    (f) whether the combination, agreement or conspiracy violated Section 1 of the Sherman Act;

    (g)    whether Plaintiff and other Members of the Class are entitled to declaratory or injunctive relief;

    (h)    the appropriate measure of damages sustained by Plaintiff and other Members of the Class; and

    (i)    whether Defendants and their co-conspirators affirmatively and fraudulently concealed the conspiracy.

36. A class action is superior to any other available method for the fair and efficient adjudication of this controversy. Indeed, it is the only realistic method for litigating the large number of claims at issue herein. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously and efficiently. There are no difficulties likely to be encountered in the management of this lawsuit that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of the controversy.

37. Defendants and their co-conspirators have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

## **VIOLATIONS ALLEGED**

38. Throughout the Class Period, Defendants and their co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in ready-mix concrete in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

39. This combination and conspiracy consisted of an agreement, understanding and concerted action among Defendants and their co-conspirators, the substantial

objective of which was to raise and maintain at artificially high levels the prices of ready-mix concrete.

40. For the purpose of forming and effectuating their combination and conspiracy, Defendants and their co-conspirators did those things which they combined and conspired to do, including, among other things, discussing, forming and implementing agreements to raise and maintain at artificially high levels the prices for ready-mix concrete.

41. On April 26, 2010, Defendant VandeBrake was charged by the United States Department of Justice (DOJ) with violations of Section One of the Sherman Act, 15 U.S.C §1. The DOJ announced that VandeBrake has agreed to plead guilty to these charges and pay a $100,000 criminal fine, and serve 19 months in jail for conspiring to fix and fixing the price of ready-mix concrete in violation of the Sherman Act. As set forth in the press release of the DOJ, the charges against VandeBrake are part of an ongoing federal antitrust investigation of the ready-mix concrete industry in Iowa and its surrounding states.

42. Defendant VandeBrake and co-conspirators, including other individuals and at least three corporations, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids for sales of ready-mix concrete by, *inter alia*: (i) engaging in discussions concerning price increases for the conspirators' price lists for ready-mix concrete; (ii) agreeing during those discussions to raise prices on their respective price lists for ready-mix concrete; (iii) engaging in discussions concerning project bids for sales of ready-mix concrete; (iv) agreeing during

those discussions to submit rigged bids for sales of ready-mix concrete at collusive and noncompetitive prices; (v) submitting bids and selling ready-mix concrete at collusive and noncompetitive prices; and (vi) accepting payment for sales of ready-mix concrete at collusive and noncompetitive prices.

43. Defendant Stewart was charged by the DOJ on May 6, 2010, with violation of Section One of the Sherman Act. The DOJ charged Stewart with having entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids for the sales of ready-mix concrete in the Northern District of Iowa. On May 24, 2010, Stewart pleaded guilty to the charge which carries a maximum penalty of ten years in prison and a fine of $1 million per count.

44. Defendant Stewart and co-conspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing prices and rigging bids for sales of ready-mix concrete by, *inter alia*: (i) engaging in discussions concerning project bids for sales of ready-mix concrete; (ii) agreeing during those discussions to submit rigged bids for sales of ready-mix concrete at collusive and noncompetitive prices to customers; (iii) submitting bids and selling ready-mix concrete at collusive and noncompetitive prices; and (iv) accepting payment for sales of ready-mix concrete at collusive and noncompetitive prices.

## COUNT ONE

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT

45. Plaintiff incorporates by reference the preceding allegations.

46. Defendants and their co-conspirators entered into and engaged in a conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

47. The conspiracy consisted of a continuing agreement, understanding or concerted action between and among Defendants and their co-conspirators unreasonably to restrain trade and commerce. In furtherance of the conspiracy, Defendants fixed, raised, maintained, and stabilized prices for ready-mix concrete in the states of Iowa, Minnesota, South Dakota, and Nebraska, and refrained from competing with each other by allocating customers and geographic territories. Defendants' conspiracy is a *per se* violation of the federal antitrust laws.

48. As a result of Defendants' unlawful conduct, the Plaintiff and Class Members have suffered injuries by paying supra-competitive prices for the ready-mix concrete they purchased from Defendants during the Class Period.

## EFFECTS

49. As a result of the combination and conspiracy between Defendants and their co-conspirators, prices of ready-mix concrete were artificially increased.

50. The conduct of Defendants and their co-conspirators was undertaken for the purpose and with the specific intent of raising and maintaining prices of ready-mix concrete and eliminating competition, in *per se* violation of Section 1 of the Sherman Act.

## FRAUDULENT CONCEALMENT

51. Throughout the Class Period, Defendants and their co-conspirators intended to and did affirmatively and fraudulently conceal their wrongful conduct and the existence of their unlawful combination and conspiracy from Plaintiff and other Members of the Class, and intended that their communications with each other and their resulting actions be kept secret from Plaintiff and other Class Members.

52. Plaintiff and the Class had no knowledge of the wrongful conduct alleged herein or of any of the facts that might have led to discovery thereof, until on or about April 2010.

53. Plaintiff and Members of the Class could not have discovered the combination and conspiracy alleged herein at any earlier date by the exercise of reasonable due diligence, because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of and affirmatively conceal their actions.

54. Based on the foregoing, customers of Defendants and their co-conspirators, including Plaintiff and Members of the Class, were unaware that prices for ready-mix concrete had been artificially raised and maintained as a result of the wrongful conduct as alleged in this Complaint.

## DAMAGES TO PLAINTIFF AND MEMBERS OF THE CLASS

55. As a direct result of the unlawful conduct alleged in this Complaint, prices for ready-mix concrete sold by Defendants and their co-conspirators were fixed and maintained at artificially high and noncompetitive levels. Plaintiff and Members of the Class were not able to purchase ready-mix concrete at prices determined by free and open

competition, and consequently have been injured in their business and property in that, *inter alia*, they have paid more for ready-mix concrete than they would have paid in a free, open, and competitive market.  Plaintiff cannot state at this time the precise amount of damages sustained by Plaintiff and the Class.  A precise determination of damages will require discovery from the books and records of defendant and its co-conspirators.  Plaintiff alleges that the damages are substantial.

## JURY TRIAL DEMANDED

56.     Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

A.      That the Court determine that this action may be maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that the Court determine that Plaintiff is an adequate and appropriate representative of the Class, that the Court designate Plaintiff's attorneys as counsel for the Class, and that the Court direct that the best notice practicable under the circumstances be given to members of the Class pursuant to Rule 23(c)(2).

B.      That the Court adjudge and decree that Defendants and their co-conspirators engaged in an unlawful combination and conspiracy in violation of Section 1 of the Sherman Act.

  C. That the Court adjudge and decree that Defendants and their co-conspirators are jointly and severally liable for threefold the damages resulting from their conduct.

  D. That the Court enter judgment for Plaintiff and the Class against Defendants and their co-conspirators and each of them, jointly and severally, for treble damages sustained by Plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

  E. That Defendants and their co-conspirators, their respective affiliates, successors, transferees, assignees and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be restrained from, in any manner:

    1) continuing, maintaining or renewing in any manner the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

    2) communicating or causing to be communicated in any manner to any other person engaged in the production, distribution or sale of any product that Defendants and their co-conspirators also produce, distribute or sell, including ready-mix concrete, information concerning prices or other terms or conditions of any such product, except to the extent necessary in connection with a *bona fide* sales transaction between parties to such communications.

  F. Plaintiff and Members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action; and

  G. That the Court direct such additional relief it may deem just and proper.

Dated: June 11, 2010          Respectfully Submitted,

                  /s/ Mark L. Zaiger
                 Mark L. Zaiger (AT0008655)
                 Jennifer E. Rinden (AT0006606)
                 **Shuttleworth & Ingersoll, P.L.C.**
                 115 Third Street SE
                 Suite 500
                 Cedar Rapids, IA 52406-2107
                 Telephone: (319) 365-9461

                 Daniel E. Gustafson
                 Daniel C. Hedlund
                 Amanda M. Williams
                 **Gustafson Gluek PLLC**
                 650 Northstar East
                 608 Second Avenue South
                 Minneapolis, MN  55402
                 Telephone: (612) 333-8844

                 Garrett D. Blanchfield
                 **Reinhardt, Wendorf & Blanchfield**
                 E-1250 First National Bank Bldg.
                 332 Minnesota Street

St. Paul, MN 55101
Telephone:  (651) 287-2100

Marvin A. Miller
**Miller Law LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  (312) 332-3400

Dianne M. Nast
Erin Burns
Jennifer Snyder
**RodaNast, P.C.**
801 Estelle Drive
Lancaster, PA  17601
Telephone:  (717) 892-3000

**Attorneys for Plaintiff**